ACCEPTED
14-14-00755-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 10:49:47 PM
CHRISTOPHER PRINE
CLERK

In The

# Court of Appeals

For The

# Fourteenth District of Texas

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 10:49:47 PM
CHRISTOPHER A. PRINE
Clerk

## 14-14-00755-CV

KELLEY STREET ASSOCIATES, LLC

*Appellant,*

V.

UNITED FIRE AND CASUALTY COMPANY

*Appellee.*

On Appeal from the 295th District Court, Harris County, Texas

Cause No 2013-36796-A

Honorable Caroline E. Baker

## BRIEF FOR APPELLEE

George W. Vie III
*gvie@millsshirley.com*
MILLS SHIRLEY L.L.P.
2228 Mechanic Street, Suite 400
Galveston, Texas 77550
(713) 571-4232
Fax (713) 893-6095

*Attorneys for Appellee*

APPELLEE REQUESTS ORAL ARGUMENT

## CORRECTED IDENTITY OF PARTIES AND COUNSEL

APPELLANT:

      Kelley Street Associates, LLC

APPELLANT'S ATTORNEY:

      H. Miles Cohn
      Michelle V. Frier
      CRAIN, CATON & JAMES, P.C.
      1401 McKinney St., 17th Floor
      Houston, Texas 77010
      Telephone (713) 752-8668
      Facsimile (713) 685-1921
      *mcohn@craincaton.com*

APPELLEE:

      United Fire and Casualty Company

APPELLEE'S APPELLATE ATTORNEYS:

      George W. Vie III
      Susan L. Price
      MILLS SHIRLEY L.L.P.
      2228 Mechanic Street, Suite 400
      Galveston, Texas 77550
      Telephone (713) 571-4232
      Facsimile (713) 893-6095
      *gvie@millsshirley.com*
      *sprice@millsshirley.com*

APPELLEES' TRIAL ATTORNEYS:

        Charles Dunkel
        MILLS SHIRLEY L.L.P.
        3 Riverway, Suite 100
        Houston, Texas 77056
        Telephone (713) 225-0547
        Facsimile (713) 225-0844

# TABLE OF CONTENTS

Corrected Identity of Parties and Counsel ..................................................i

Table of Contents ........................................................................................iii

Table of Authorities ..................................................................................... v

Reply Issue Presented .................................................................................. 1

Statement of Facts ........................................................................................ 1

Summary of the Argument............................................................................ 5

Argument and Authorities ............................................................................ 7

    1. The Standard and Scope of Review Applicable to the Competing Motions. .... 7

    2. Kelley Street Associates Did Not Have Coverage Under the Policy's Water Exclusion Endorsement. ........................................................................ 8

        A. Kelley Street Associates did not carry its burden as an insured and as a summary judgment movant................................................................. 8

        B. The Water Exclusion Endorsement is interpreted like any other contract provision. .............................................................................. 9

        C. The Water Exclusion Endorsement is not ambiguous............................ 10

    3. The Application of the Water Exclusion Endorsement is Required by the Policy's Plain and Unambiguous Terms. ..........................................................11

        A. The words of the Water Exclusion Endorsement support summary judgment for United Fire. ....................................................................... 12

    4. The Application of the Water Exclusion Endorsement is not Changed by Reference to Case Law........................................................................... 18

Conclusion and Prayer ............................................................................... 23

Certificate of Compliance ...........................................................................24

Certificate of Service..................................................................................... 25

Appendix

Tab 1        Order denying summary judgment to Kelley Street Associates

Tab 2        Order granting summary judgment to United Fire

Tab 3        Order granting motion to sever Kelley Street Associates' claims against United Fire

Tab 4        Insurance Policy Coverage and Declarations

Tab 5        Insurance Policy – Causes of Loss – Special Form

Tab 6        Insurance Policy - the Water Exclusion Endorsement

Tab 7        Affidavit of Duane Kamins

Tab 8        Affidavit of John Moore

## TABLE OF AUTHORITIES

*Cases*

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*,

   124 S.W.3d 154 (Tex. 2003) ..................................................................9, 10, 14

*Balandran v. Safeco Ins. Co. of Am.*,

   972 S.W.2d 738 (Tex. 1998) ..................................................................17

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,

   130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)...................8

*Ferguson v. Bldg. Materials Corp. of Am.*,

   295 S.W.3d 642 (Tex. 2009) .....................................................................7

*Fiess v. State Farm*,

   202 S.W.3d 744 (Tex. 2005) .................................................................. 10

*Fleming & Associates, L.L.P. v. Barton*,

   425 S.W.3d 560 (Tex. App.—Houston [14th Dist.] 2014, pet. requested) ............. 7

*For Kids Only Dev. Ctr., Inc. v. Philadelphia Indem. Ins. Co.*,

   260 S.W.3d 652 (Tex. App.—Dallas 2008, pet. denied)....................................... 18

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,

   327 S.W.3d 118 (Tex. 2010) .....................................................................8

*Goebel v. Brandley*,

   174 S.W.3d 359 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)...................7

*Haines v. United Sec. Ins. Co.*,

   602 P.2d 901 (Colo. App. 1979)..................................................................20

*In re Deepwater Horizon*,

    No. 13-0670, 2015 WL 674744 (Tex. Feb. 13, 2015) ................................9

*Jackson v. Am. Mut. Fire Ins. Co.*,

    299 F. Supp. 151 (M.D.N.C. 1968) *aff'd,* 410 F.2d 395 (4th Cir. 1969)................ 21

*Lundstrom v. United Servs. Auto. Ass'n-CIC*,

    192 S.W.3d 78 (Tex. App.—Houston [14th. Dist.] 2006, pet. denied) .................17

*Old Dominion Ins. Co. v. Elysee, Inc.*,

    601 So.2d 1243 (Fla. Dist. Ct. App. 1992) ................................................22

*Pichel v. Dryden Mut. Ins. Co.*,

    117 A.D.3d 1267, 986 N.Y.S.2d 268 (2014) ..............................................22

*Progressive Cnty. Mut. Ins. Co. v. Kelley*,

    284 S.W.3d 805 (Tex. 2009) (per curiam) ................................................ 10

*Sec. Mut. Cas. Co. v. Johnson*,

    584 S.W.2d 703 (Tex. 1979) ....................................................................... 14

*Shafaii Children's Trust & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*,

    417 S.W.3d 614 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ...................9

*Silow v. State Farm Ins. Co.*,

    No. CIV.A. 94-2956, 1994 WL 709362 (E.D. Pa. Dec. 20, 1994) ..........................17

*State Farm Fire & Cas. Co. v. Vaughan*,

    968 S.W.2d 931 (Tex. 1998) ..........................................................................11

*State Farm Life Ins. Co. v. Beaston*,

    907 S.W.2d 430 (Tex. 1995) ..........................................................................10

*State Farm Lloyds v. Page*,

    315 S.W.3d 525 (Tex. 2010) ............................................................... 9, 10, 11

*Ulico Cas. Co. v. Allied Pilots Ass'n,*

    262 S.W.3d 773 (Tex. 2008) .................................................................. 8

*Western Reserve Life Ins. Co. v. Meadows*,

    261 S.W.2d 554 (Tex. 1953) ................................................................ 13

*WesternGeco, L.L.C. v. Input/Output, Inc.*,

    246 S.W.3d 776 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ......................... 8

To The Honorable Fourteenth Court of Appeals:

Appellee United Fire and Casualty Company requests the Court affirm the summary judgment in its favor and deny Kelley Street Associates' competing request to render summary judgment in its favor.

## REPLY ISSUE PRESENTED

The trial court correctly granted summary judgment to United Fire and denied the cross-motion for summary judgment of its insured because Kelley Street Associates' loss was excluded under the Water Exclusion Endorsement (responsive to Appellant's Issue No. 1).

## STATEMENT OF FACTS

This is an insurance-coverage dispute for property loss benefits, resolved by the district court on competing motions for summary judgment. CR 17 (Kelley Street Associates' motion); CR 128 (United Fire's motion).

Appellant Kelley Street Associates, LLC sued United Fire and Casualty Company and the City of Houston. CR 5. Kelley Street Associates complained the City of Houston and its public works department had caused property damage to the plumbing system of a commercial building owned by Kelley Street Associates. CR 6. Kelley Street Associates also claimed that the property damage was a covered loss under a commercial general liability insurance policy issued by United Fire. CR 7-8. United Fire determined that the policy excluded the loss caused by water that backs up or overflows from a sewer, drain, or sump. CR 7. The insurer

did make a payment under the policy's specific endorsement for sewer backup coverage, CR 7-8, but Kelley Street Associates claimed its damages exceeded the limits of that endorsement. United Fire answered the suit and asserted, among other defenses, that it had paid everything Kelley Street Associates was entitled to under the policy. CR 10-11.

Kelley Street Associates thereafter moved for partial summary judgment against United Fire. CR 17-24. Specifically, Kelley Street Associates sought summary judgment on the coverage question, reserving for later recovery its damages, attorney's fees, and its claim for extra-contractual damages under the Insurance Code. CR 17. Its summary judgment proof included two affidavits and deposition excerpts, along with the United Fire insurance policy. CR 18. In its factual statement supporting the motion for summary judgment, Kelley Street Associates acknowledged that City of Houston's work on a meter and valves has caused holding tanks in a septic system to fill, resulting in water backing up through the Kelley Street Associates' building and floor drains, with resulting damage. CR 18-19. As in its petition, Kelley Street Associates conceded that United Fire had denied a claim for damages from the incident because of a policy exclusion for losses caused by "water that backs up or overflows from a sewer, drain, sump, sump pump, or related equipment." CR 19. Kelley Street Associates argued that

the City had caused damage to the plumbing system, which in turn had caused the damage to the building from water running into the storm sewer system, and therefore the loss was not from a "mere backup or overflow of water from a sewer, drain or sump." CR 19. Kelley Street Associates also acknowledged that United Fire had paid a loss under the endorsement for "sewer backup" coverage that was part of the policy placed into effect after the loss.[1] CR 20. Kelley Street Associates argued that the exclusion did not apply, but did not assert the exclusion was ambiguous. CR 20.

United Fire amended its answer to more specifically plead the exclusions of the policy for loss or damage caused by water. CR 124-26.[2] It then responded to the motion for summary judgment of Kelley Street Associates, and filed its cross-motion for summary judgment. CR 128-41. United Fire noted in its response and cross-motion that the rules of construction advanced by Kelley Street Associates

---

[1] Following the loss, Kelley Street Associates and United Fire agreed to amend the policy and add a special endorsement that provided sewer backup coverage, limited to the Per Policy Property Damage Limit ($50,000), where the water loss or damage did not result from the intentional or negligent act of the insured. CR 154, 196 (CP 70 34 12 01). The special endorsement was made effective as of the original policy incept date. CR 147. Kelley Street Associates and United Fire also agreed that the payment under the special endorsement did not waive Kelley Street Associates' right to seek additional coverage under the original Water Exclusion Endorsement, or United Fire's coverage defenses to the applicability of that endorsement. CR 26 (affidavit); CR 98 (email).

[2] It was later amended a second time. CR 258-61.

applied only when the policy provision at issue was ambiguous, while the United Fire policy at issue was not ambiguous.CR 134. United Fire also argued that the undisputed summary judgment record showed that water had filled from a commercial property's septic tank and then overflowed into the property's floor drains, causing damage, satisfying the plain meaning of the exclusion. CR 131. United Fire also noted that the policy exclusion excluded loss "indirectly" caused by water and regardless of other events or causes that contributed to the loss concurrently or in any sequence. CR 134. Thus, Kelley Street Associates' focus on the City of Houston events that preceded the water backing up from a sewer or drain did not alter the analysis. CR 134. Finally, United Fire argued that Kelley Street Associates' interpretation of the exclusion was not reasonable and not supported by the case law on which it relied in its partial motion for summary judgment. CR 136-40.

Kelley Street Associates filed a reply in support of its motion and a response to United Fire's cross-motion. CR 244-54. United Fire responded. CR 262-74.

The district court thereafter denied Kelley Street Associates' motion for partial summary judgment, CR 276, and granted United Fire's cross-motion. CR 277. After granting severance from the claims against the City of Houston, CR 285-

87, Kelley Street Associates moved for reconsideration and new trial. CR 288-90. No such relief was granted, and this appeal followed. CR 294-95.

## SUMMARY OF THE ARGUMENT

The parties agree that any coverage under the policy in excess of the payment by United Fire rests on the applicability of the Water Exclusion Endorsement. A policy is unambiguous, as a matter of law, if the Court can give it a definite legal meaning. Here, the policy and the Water Exclusion Endorsement are not ambiguous, and therefore the Court will not favor Kelley Street Associates' interpretations of the policy and the Water Exclusion Endorsement. To the contrary, the unambiguous provisions were correctly construed by the district court, which rejected summary judgment for Kelley Street Associates and rendered judgment for United Fire. That result should be affirmed.

Kelley Street Associates focuses on origin of its loss; that is, it claims that the damages were caused not by "mere back-up or overflow of water from the City main" but backup or overflow caused by the City of Houston damaging Kelley Street Associates' plumbing system. But the extra facts about why the water entered the building do not change the coverage analysis. The United Fire policy excluded losses or damage "caused directly or indirectly" by water, and "[s]uch loss or damage is excluded regardless of any other cause or event that contributes

concurrently or in any sequence to the loss." The impact of the Water Exclusion Endorsement is substantially expanded by the language extending it to losses caused "indirectly" by water that backups or overflows from a sewer or drain.

Further, the summary judgment record is uncontroverted that water overflowed or backed up into Kelley Street Associates' premises or was otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The sequence of how these events occurred –from City work, to failed valve, to filled septic system, to water that came up through the drains throughout the building – is not controlling since loss or damage is excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

Finally, Kelley Street Associates argues interpretations of the Water Exclusion Endorsement that rest on words or concepts absent from the policy itself. Whether these interpretations arise from factual distinctions or distinguishable case law, the Court would have to rewrite the policy or add to its language to accept Kelley Street Associates' position. In contrast, a plain reading of the policy and the Water Exclusion Endorsement are all that is necessary to affirm the judgment.

The Court need not look to case law to determine what the Water Exclusion Endorsement means, because the question will be answered when the Court looks

first to the policy itself. The policy and the Water Exclusion Endorsement were properly construed by the district court. That ruling should be affirmed.

## ARGUMENT AND AUTHORITIES

1. The Standard and Scope of Review Applicable to the Competing Motions.

In its brief, Kelley Street Associates prays for rendition of judgment that its loss is covered, and a remand for determination of damages. *See* Appellant's brief at 14. Instead, the Court should overrule the issues presented on appeal and affirm the summary judgment granted to United Fire.

This Court reviews the trial court's decision to grant summary judgment to United Fire *de novo. Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 567 (Tex. App.—Houston [14th Dist.] 2014, pet. requested) citing *Ferguson v. Bldg. Materials Corp. of Am.,* 295 S.W.3d 642, 644 (Tex. 2009). Typically, when reviewing cross-motions for summary judgment the Court considers both motions and renders the judgment that the trial court should have rendered. Each party must carry its own summary judgment burden and neither can prevail due to the other's failure to meet that burden. *Goebel v. Brandley*, 174 S.W.3d 359, 362 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because both Kelley Street Associates and United Fire were movants, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all of the

elements of the claim or defense as a matter of law. *WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

2.      Kelley Street Associates Did Not Have Coverage Under the Policy's Water Exclusion Endorsement.

**A. Kelley Street Associates did not carry its burden as an insured and as a summary judgment movant.**

Initially, Kelley Street Associates has the burden to establish coverage under a commercial general liability policy. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Further, an insured is not entitled to recover under an insurance policy unless it proves its damages are covered by the policy.

If the insured proves coverage, then United Fire must prove the loss is within an exclusion of the policy. *Gilbert*, 327 S.W.3d at 124 citing *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 782 (Tex. 2008). If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Gilbert*, 327 S.W.3d at 124 citing *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.,* 130 S.W.3d 181, 193 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Kelley Street Associates did not carry that burden, while United Fire proved the loss was excluded by the Water

Exclusion Endorsement. More specifically, Kelley Street Associates did not raise any genuine issue of fact to prove that the loss was not attributable to the pleaded excluded water hazard.

**B. The Water Exclusion Endorsement is interpreted like any other contract provision.**

Contracts of insurance are reviewed by this Court just like any other contract. *Shafaii Children's Trust & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*, 417 S.W.3d 614, 618-19 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The Court begins its analysis with the policy language. *Id.*, citing *Gilbert*, 327 S.W.3d 118, 126 (Tex. 2010). The courts' primary objective is to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement. *In re Deepwater Horizon*, No. 13-0670, 2015 WL 674744, at *9 (Tex. Feb. 13, 2015). "To that end, we give the words in the policy their ordinary and generally accepted meaning unless the policy indicates that the parties intended the language to impart a technical or different meaning." *Id.*, citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). Courts will examine the policy as a whole, seeking to harmonize all provisions and render none meaningless. *Gilbert*, 327 S.W.3d at 126. If an insurance contract uses unambiguous language, courts will construe it as a matter of law and enforce it as written. *In re Deepwater Horizon, citing State Farm Lloyds v. Page*, 315 S.W.3d 525, 527–28 (Tex. 2010). Whether a

contract is ambiguous is a question of law for the court to decide by looking at the policy as a whole in light of the circumstances present when the contract was entered. *In re Deepwater Horizon.* Disagreement about a policy's meaning does not create an ambiguity if there is only one reasonable interpretation. *Id.* "Parties' conflicting interpretations alone do not establish ambiguity." *Shafaii*, 417 S.W.3d at 619, citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010); *see also Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). And extrinsic evidence is not admissible for the purpose of creating an ambiguity in an insurance policy. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009) (per curiam). Any ambiguity must be evident from the language of the policy itself. *Fiess v. State Farm*, 202 S.W.3d 744, 747 (Tex. 2005).

## C. The Water Exclusion Endorsement is not ambiguous.

In section I of its argument, and its Summary of the Argument, Kelley Street Associates claims that it only needs to show that the construction of the policy it offers is "reasonable." Appellant's brief at 7. That claim requires, however, that there be some ambiguity in the insurance contract. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (explaining that only if insurance policy remains ambiguous after courts apply canons of interpretation should policy language be construed against the insurer in a manner that favors coverage). Thus,

the first question for this Court is whether the United Fire policy is ambiguous, not whether Kelley Street Associates' construction is reasonable. This first issue is a question of law, *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010), and thus suitable for summary judgment and this Court's *de novo* review. The contra-insurer rule of construction is not applicable to this case, *see State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998), and Kelley Street Associates is not to be favored in the Court's construction of the insurance policy. *Compare with* appellant's brief at 5.

3.      The Application of the Water Exclusion Endorsement is Required by the Policy's Plain and Unambiguous Terms.

Kelley Street Associates was the insured under a policy for building and personal property coverage, form CP 00 10 06 07. The United Fire policy has a cause of loss special form (CP 10 30 06 07) that sets out the covered causes of loss. CR 60. Risks of direct physical loss are covered causes of loss unless they are excluded in the special form, or limited. Id. Among the excluded losses are losses or damage "caused directly or indirectly" by water. CR 60-61. "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." CR 60. The exclusion for loss or damage caused directly or indirectly by water included

> o   Water that backs up or overflows from a sewer, drain, or sump;

CR 61.

The Water Exclusion Endorsement (CP 10 32 08 08) replaced the special form provision and excluded loss or damage directly or indirectly caused by

- o Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

CR 70, 244. Notably, the exclusion applies regardless of whether the "water" "is caused by an act of nature or is otherwise caused." Appellant's brief at 7; CR 70, 247.

The district court correctly granted summary judgment to United Fire because Kelley Street Associates losses are excluded as "caused directly or indirectly" by water that backed up, overflowed or was otherwise discharged from a sewer, drain, sump, sump pump or related equipment. There was no summary judgment evidence that a covered loss caused the alleged damages to Kelley Street Associates' building.

**A. The words of the Water Exclusion Endorsement support summary judgment for United Fire.**

This case does not require the Court to make distinctions between "surface water," "high water," "tidal water," "flood water" or other such terms. Rather, the Water Exclusion Endorsement excluded coverage for all risk of loss or damage caused directly or indirectly by "water," whatever its nature or source – whether

caused by an act of nature or otherwise. When a term is not defined in an insurance policy, it must be given its plain, ordinary, and generally accepted meaning, unless the policy indicates the term was used in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953). "Water" is an unambiguous term with a plain, ordinary meaning. There is no dispute in this case about the water substance that was involved here – it was "water."

The Water Exclusion Endorsement also broadly excludes water that backs up *or* overflows *or* is otherwise discharged. To "back up" includes water that accumulates, just as the water did here. As summary judgment evidence, Kelley Street Associates offered the affidavit of its President, who stated that on the date of Kelley Street Associates' loss "water began to flow through a series of floor drains in the building . . . ."CR 25. Kelley Street Associates' plumbing contractor stated the septic system was unable to keep up with the volume of water into the sanitary sewer system. CR 170. More specifically, the contractor testified that flush valves in the building were damaged and malfunctioning. Due to that malfunction,

> water had been continually flowing into the sanitary sewer septic system in the building. The septic system could not keep up with the volume of water being introduced to the system; after the septic system filled, ***water came up through the drains*** throughout the building, resulting in the flooding of the building.

CR 99 (emphasis added). This summary judgment evidence demonstrates water backed up or overflowed from a sewer or drain, in a direction opposite ("up") the intended and usual flow, resulting in an excluded loss.

The terms "sewer," "drain," "sump," and "sump pump" are also unambiguous and have no special, technical meaning. They should be given their ordinary and generally accepted meaning. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003) citing *Sec. Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex. 1979). As United Fire explained in the district court, the noun "drain" is primarily defined by the Merriam-Webster dictionary as "something (such as a pipe) that is used for removing a liquid from a place or container." CR 135. "Sewer" is primarily defined as "an artificial usually subterranean conduit to carry off sewage and sometimes surface water (as from rainfall)."

Kelley Street Associates claims that a different provision of the contract providing "additional water coverage" and a definition of "water damage," both at CR 69, mean that the Water Exclusion Endorsement only applies to events outside the property and losses within the plumbing system of the building will be covered. See appellant's brief at 8. To be sure, all of the policy terms should be read together; but the "additional water coverage" provision (referencing loss or

damage from "covered water") [3] does not modify the language of the Water Exclusion Endorsement. And the definition of "water damage" to mean leakage of water or steam as the direct result of breaking apart or cracking of a system located on the premises and containing water or steam does not aid in construing the Water Exclusion Endorsement. Further, the "water damage" definition excludes a "sump system, including its related equipment and parts" which is plainly part of the Water Exclusion Endorsement.

Moreover, there is simply no policy language that qualifies the terms "sewer," "drain," "sump," and "sump pump" by dividing them into parts or with reference to building locations, or to the inside or outside of the insured premises. Even considering the "water damage" definition at CR 69, it provides no additional language that would permit the Court to construe the Water Exclusion Endorsement as Kelley Street Associates desires. Rather, the Court would have to assert additional language into the policy, which it should refuse to do. *Gilbert*, 327 S.W.3d at 126 (cautioning that courts will honor the parties' agreement and must not remake the contact by reading additional provision into the insurance policy).

---

[3] CR 69 (Water Damage, Other Liquids, Powder Or Molten Material Damage).

- 15 -

Kelley Street Associates also attempts to reframe the issue here as an internal "failure of the plumbing system." CR 25. In a similar fashion, Kelley Street Associates argues that an overflow of water originating inside the building would be covered. See appellant's brief at 9. A failure of the plumbing system may not be explicitly excluded, but among the excluded losses are losses or damage "caused directly or indirectly" by water. CR 60-61. "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." CR 60. Thus the policy language broadly covers damage by water that backs up or overflows or is otherwise discharged from a drain regardless of other events or causes that contributed to the event. With this language, Kelley Street Associates' proposed internal/external distinction lacks any support in the insuring language of the policy.

Intent to make such distinctions could be easily reflected in the language of an exclusion, as this example shows:

This peril does not include loss

c. caused by or resulting from water *from outside the plumbing system* that enters through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area . . . .

- 16 -

*Silow v. State Farm Ins. Co.*, No. CIV.A. 94-2956, 1994 WL 709362, at \*1 (E.D. Pa. Dec. 20, 1994) (emphasis supplied). Such language is absent here.

Kelley Street Associates also deviates from a common understanding in its proposed definition of "drain." See appellant's brief at 9. It is undisputed in the summary judgment record that water in the Kelley Street Associates building backed up or overflowed from a floor drain because

> "damaged flush valves caused the holding tanks in the septic system to fill rapidly. As a result of the Building's tanks filling, water came up through the floor drains located throughout the Building, flooding it."

CR 18 (Kelley Street Associates' motion for summary judgment, at "The Facts" section); CR 23. See also CR 25 (affidavit of D. Kamins stating "water began to flow through a series of floor drains in the building."); CR 96 ("According to [Kelley Street Associates] employees, . . . [w]hen the water was turn back on, they noticed water coming from the drains in all bathrooms and the wet bar drain in Mr. Kamins['] office."). In construing this policy, the Court's inquiry is, first, an effort to determine the ordinary lay meaning of the words to the general public. *See Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 91 (Tex. App.—Houston [14th. Dist.] 2006, pet. denied) citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). The general meaning of "drain" as a pipe that carries off water would include a floor drain.

Kelley Street Associates also criticizes United Fire for equating "sewer" with "septic system" or "septic tank." See appellant's brief at 10. But again, the subtle distinctions that Kelley Street Associates proposes are beyond the ordinary lay meaning of these words to the general public. [4] Further, these fine distinctions are not consistent with the policy language excluding losses from "water that backs up or overflows from a sewer, drain, sump, sump pump, *or related equipment*" (emphasis added).

For all of these reasons, based on the policy language, summary judgment for United Fire should be affirmed.

4.      The Application of the Water Exclusion Endorsement is not Changed by Reference to Case Law.

In section III of its brief, Kelley Street Associates argues that case law supports its interpretation of the policy, primarily relying on a case from the Dallas Court of Appeals. See appellant's brief at 10, citing *For Kids Only Dev. Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, 260 S.W.3d 652 (Tex. App.—Dallas 2008, pet. denied). The case arose from a day care center that was flooded with sewage

---

[4] A septic tank or system is part of a sewer system. Kelley Street Associates' attempt to distinguish between sewer as public system and septic as private system, see appellant's brief at 10, is another construction requiring words to be read into the policy in the guise of interpretation.

flowing from floor drains in the building. A witness said that water had also flowed from a manhole in the street outside, and a city official had testified that the overflow was caused by stoppage in the city sewer main.

The policy at issue provided covered causes of loss, representing direct physical losses subject to a long list of exclusions. 260 S.W.3d at 653. The exclusion at issue excluded from coverage such damage caused directly or indirectly by "water that backs up or overflows from a sewer, drain or sump." There was also an endorsement that provided limited recovery for sewer and drain backups, including loss or damage resulting from flood damage or water that backs up from a sewer, drain or sump. The insured claimed that the sewage overflow was an overflow from its plumbing system that did not trigger the sewer and drain backup exclusion and its more limited coverage. *Id*. at 654.

The court of appeals held that the policy plainly excluded coverage for water that backed up from a sewer drain or sump. The court held that reading the exclusion so as to eliminate instances where water had traveled through the insured's plumbing system "would read the exclusion out of the policy." *Id.* at 655. The court of appeals thus concluded the policy unambiguously excluded from coverage the type of drain and sewer backup that the insured had experienced.

Thus, the claimant in the *For Kids Only* suit made a similar argument to Kelley Street Associates here: once water enters a building's plumbing system, its status changes and any damage it causes becomes a non-excluded occurrence. Yet the Dallas Court of Appeals rejected that argument. Kelley Street Associates states that notwithstanding the Dallas court's analysis, what matters is that the court focused "on the source of the overflow." See appellant's brief at 11. Thus, explains Kelley Street Associates, here the overflow was caused by damaged valves that were part of its plumbing system and the overflow thus "came" from Kelley Street Associates' system. In this case, regardless of what the overflow source was, when water "backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment," resulting damage is excluded from coverage. *Compare with Haines v. United Sec. Ins. Co.*, 602 P.2d 901, 902 (Colo. App. 1979) (policy provided coverage for accidental discharge or "overflow from within a plumbing system" but not "water that backs up through sewers or drains," thus requiring the court to determine whether cause of accidental discharge was inside or outside a plumbing system). In short, *For Kids Only Dev. Ctr., Inc. v. Philadelphia Indem. Ins. Co.* presents no reason to reverse the summary judgment for United Fire, and actually supports the result in this case.

Kelley Street Associates notes that the Dallas court in *For Kids Only* cited

*Jackson v. Am. Mut. Fire Ins. Co.*, 299 F. Supp. 151, 152 (M.D.N.C. 1968) *aff'd,* 410

F.2d 395 (4th Cir. 1969). See appellant's brief at 11. *Jackson*, however, is quickly

distinguished because it contained specific policy language that provided coverage

for leaks or failure of the internal plumbing system, and thus the court concluded

the "sewers or drains" in the exclusion must have referred to fixtures outside the

internal plumbing system. *Jackson*, 299 F. Supp. at 155-56. Thus, the policy terms

set up the "internal/external" analysis –although the court ultimately concluded

"it would appear that the parties intended to exclude loss caused by the backing up

of water through sewers or drains even though this water overflows from within the

plumbing system in the plaintiff's home." *Jackson*, 299 F. Supp. at 157.

Kelley Street Associates also cites a New York case, see appellant's brief at

13, for the on premises/off premises analysis.[5] In that case, the court was faced with

a water damage exclusion that applied to loss caused by "water which backs up

through sewers or drains." Another exclusion stated there was no coverage "for

---

[5] Kelley Street Associates cites *Pichel v. Dryden Mut. Ins. Co.*, 965 N.Y.S.2d 342, 343 (Sup. Ct. 2013) which is the trial court decision. The appellate decision is *Pichel v. Dryden Mut. Ins. Co.*, 117 A.D.3d 1267, 1267-68, 986 N.Y.S.2d 268, 270 (2014).

loss caused by repeated or continuous discharge, or leakage of liquids or steam from within a plumbing . . . system." But that exclusion also stated the insurer would "pay for loss caused by the accidental leakage, overflow or discharge of liquids or steam from a plumbing . . . system." And, the court noted, a "plumbing system" could include drains. The court reconciled these provisions so that the exclusion applied to a backup that originates off an insured's property, while the coverage provision applies to an occurrence originating within the insured's property and within the "plumbing system." As the Court can see, the New York case incorporated the "plumbing system" concept because the policy language did too. *Pichel v. Dryden Mut. Ins. Co.*, 117 A.D.3d 1267, 1267-68, 986 N.Y.S.2d 268, 270 (2014). Unlike the New York case, here there are no competing exclusion and coverage provisions.

Kelley Street Associates also cites *Old Dominion Ins. Co. v. Elysee, Inc.,* 601 So.2d 1243 (Fla. Dist. Ct. App. 1992). See appellant's brief at 13. In that case, a blockage formed in the main sewer line located outside the insured's retail store at a mall. When other stores which were connected to the main sewer line used their toilets or sinks, the water was discharged onto the insured's premises. The insurance policy at issue excluded damage caused by water that "backs up from a sewer or drain." While the trial court had heard testimony about the relevant sewer

system and where the mall owner and store owner divided responsibility, 601 So.2d at 1244, the court of appeals found that the water that discharged from the sewer and into the retail store was plainly water that had backed up from a sewer or drain. *Id.* at 1245. Contrary to Kelley Street Associates' suggestion, the *Old Dominion* case does not set a bright-line rule that sewer systems always end at property lines, or cannot be part of an insured's premises.

The other cases cited by Kelley Street Associates at appellant's brief 13-14 likewise do not demonstrate that the district court's summary judgment ruling as to this insurance contract was in error, or that Kelley Street Associates is entitled to rendition on its cross-motion. The cases also do not raise a genuine issue of fact precluding summary judgment for United Fire. At best, the case law reminds reviewing courts that each policy must be interpreted based on its own specific contract language. Here, Kelley Street Associates has failed to demonstrate that the district court incorrectly interpreted the Water Exclusion Endorsement and the CGL policy as a matter of law, or of fact.

## CONCLUSION AND PRAYER

For the reasons stated in this brief, appellee United Fire and Casualty Company requests the Court affirm the judgment. The costs of appeal should be

taxed against appellant Kelley Street Associates, LLC. Appellee also requests any other proper relief.

Respectfully submitted,

MILLS SHIRLEY L.L.P.

By:    */s/ George W. Vie III*
        George W. Vie III
State Bar No. 20579310
2228 Mechanic Street, Suite 400
Galveston, Texas 77550
(713) 571-4232
Fax (713) 893-6095
*gvie@millsshirley.com*

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this computer-generated document contains (in full) 6002 words according to the word count provided by Microsoft Word 2010 (version 14.0.6129.5000 (32-bit)).

*/s/ George W. Vie III*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via e-service to the following counsel of record on April 3, 2015:

APPELLANT'S ATTORNEY:

H. Miles Cohn
Michelle V. Frier
Crain, Caton & James, P.C.
1401 McKinney St., 17th Floor
Houston, Texas 77010
*mcohn@craincaton.com*

*/s/ George W. Vie III*
George W. Vie III


Appendix Tab 1

CAUSE NO. 2013-36796

| KELLEY STREET APARTMENTS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CITY OF HOUSTON and UNITED | § | |
| AND CASUALTY COMPANY | § | 295th JUDICIAL DISTRICT |

## ORDER

Came on to be heard Plaintiff Kelley Street Apartments' Motion for Partial Summary

Judgment. Upon consideration, the Court DENIES Plaintiff Kelley Street Apartments' Motion

for Partial Summary Judgment.

Signed this 9th day of May, 2014

_Caroline Baker_
Judge Presiding

**FILED**
Chris Daniel
District Clerk

MAY - 9 2014

Time:_____
Harris County, Texas

By_____
Deputy

276


Appendix Tab 2

CAUSE NO. 2013-36796

| KELLEY STREET APARTMENTS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CITY OF HOUSTON and UNITED | § | |
| AND CASUALTY COMPANY | § | 295th JUDICIAL DISTRICT |

(3-1)

## ORDER

Came on to be heard Defendant United Fire and Casualty Company's Counter-Motion for

Final Summary Judgment   Upon consideration, the Court GRANTS Defendant United Fire and

Casualty Company's Counter-Motion for Final Summary Judgment.

Signed this 9th day of May, 2014.

_Caroline Baker_
Judge Presiding

**FILED**
Chris Daniel
District Clerk

MAY - 9 2014

Time:_____
Harris County, Texas
By_____
Deputy

277


Appendix Tab 3

6/6/2014 4 20 47 PM
Chris Daniel - District Clerk Harris County
Envelope No 1473586
By GILBERT LIRA

CAUSE NO. 2013-36796 A

| | | |
|---|---|---|
| KELLEY STREET ASSOCIATES, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| CITY OF HOUSTON and UNITED FIRE | § | |
| AND CASUALTY COMPANY, | § | |
| | § | |
| Defendants. | § | 295TH JUDICIAL DISTRICT |

## ORDER GRANTING MOTION TO SEVER PLAINTIFF'S CLAIMS AGAINST DEFENDANT UNITED FIRE AND CASUALTY COMPANY & FOR ENTRY OF FINAL JUDGMENT REGARDING DEFENDANT UNITED FIRE AND CASUALTY COMPANY

On this day came on to be considered Defendant, United Fire and Casualty Company's Motion to Sever and for Entry of Final Judgment regarding Plaintiff's claims against Defendant United Fire and Casualty Company. After considering said Motion and the pleadings on file, the Court is of the opinion and finds that said Motion is well taken. It is therefore,

ORDERED that United Fire and Casualty Company's Motion to Sever and for Entry of Fianl Judgment is GRANTED. It is further ORDERED that Plaintiff's claims against United Fire and Casualty Company are hereby severed from Plaintiff's remaining claims against City of Houston. The Clerk of the Court shall assign the severed case the separate cause number of 2013-36796-A; and file copies of the following pleadings with new Cause No. 2013-36796-A:

1. 06/21/2013    Plaintiff's Original Petition

2. 07/12/2013    Citation filed with the Court pertaining to service on Defendant United Fire and Casualty Company

3. 07/26/2013    Defendant United Fire and Casualty Company's Original Answer

4. 08/05/2013    Notice of (Plaintiff's) Counsel's Change of Law Firm and Address

Page | 7

285

5. 08/06/2013    Designation of Lead Counsel (Defendant United Fire's counsel)

6. 01/08/2014    Plaintiff's Motion for Partial Summary Judgment against Defendant United Fire and Casualty Company, including exhibits and proposed order

7. 01/10/2014    Notice of Oral Hearing (on Plaintiff's Motion for Partial Summary Judgment Against United Fire and Casualty Company)

8. 01/09/2014    Docket Control Order

9. 01/31/2014    Defendant's First Amended Answer

10. 01/31/2014    Defendant, United Fire and Casualty Company's Response to Plaintiff's Motion for Partial Summary Judgment & Counter-Motion for Final Summary Judgment Against Plaintiff & Request for Resetting of Oral Hearing. Including all exhibits and Proposed Orders

11. 02/05/2014    Defendant United Fire and Casualty Company's Unopposed Motion for Leave to File Exhibit Attachment to its MSJ Response, Exhibit and proposed Order

12. 02/06/2014    Amended Notice of Oral Hearing (on Plaintiff's Motion for Partial Summary Judgment Against United Fire and Casualty Company)

13. 02/06/2014    Notice of Hearing (For United Fire and Casualty Company's Counter-Motion for Final Summary Judgment Against Plaintiff)

14. 02/21/2014    Amended Notice of Hearing (for Defendant, United Fire and Casualty Company's Counter-Motion for Final Summary Judgment Against Plaintiff)

15. 02/24/2014    Second Amended Notice of Oral Hearing (for Plaintiff's Motion for Partial Summary Judgment Against United Fire and Casualty Company)

16. 03/12/2014    Plaintiff's Combined (I) Reply In Support of Motion for Partial Summary Judgment and (II) Response to Defendant United Fire's Counter-Motion for Summary Judgment, including proposed Partial Summary Judgment Against United Fire and Casualty Company

17. 03/21/2014    Defendant's Second Amended Answer

18. 03/24/2014    Defendant, United Fire and Casualty Company's Combined (1) Reply to Plaintiff's Response to United Fire's Motion for Final Summary

Certified Document Number: 61450241 - Page 2 of 3

Judgment & (2) Sur-Reply to Plaintiff's Motion for Partial Summary Judgment

19. 03/31/2014 Order Granting Defendant's Motion for Leave to File Exhibit Attachment to Its MSJ Response

20. 04/30/2014 Agreed Motion for Continuance, and proposed Order

21. 05/09/2014 Order (Denying Plaintiff's Motion for Partial Summary Judgment)

22. 05/09/2014 Order (Granting Defendant United Fire and Casualty Company's Counter-Motion for Final Summary Judgment)

23. This Motion To Sever and for Entry of Final Judgment regarding Plaintiff's claims against Defendant United Fire and Casualty Company

24. This Order Granting Motion to Sever and for Entry of Final Judgment; and

25. Final Judgment Regarding Plaintiff's Claims Against Defendant United Fire and Casualty Company

SIGNED this 25th day of June, 2014.

_Caroline Baker_
JUDGE PRESIDING

SLP/tmb/263909/000120 446

Certified Document Number: 61450241 - Page 3 of 3



Appendix Tab 4

# ⑩ UNITED FIRE GROUP®

## UNITED FIRE & CASUALTY COMPANY

118 Second Avenue SE
P.O. Box 73909
Cedar Rapids, IA 52407-3909

President

Secretary

## A STOCK INSURANCE COMPANY

IL 70 28 UF 01 08



EXHIBIT

A - 1

UFGKelley_00386
27

**UNITED FIRE & CASUALTY COMPANY**
PO BOX 73909, CEDAR RAPIDS IA 52407

| POLICY NUMBER: | 85315789 |
|---|---|

ACCOUNT NUMBER:3000193367　(2) COMMERCIAL PROPERTY
　　DIRECT BILL - 150

**COMMERCIAL PROPERTY COVERAGE PART**

ISSUE DATE 10-10-2012 MD3　REPLACEMENT OF 0106　85315789　DECLARATIONS AMENDED 06/20/2012

| NAMED INSURED AND MAILING ADDRESS | AGENCY & CODE 830117 |
|---|---|
| KELLEY STREET ASSOCIATES LLC<br>HOUSTON TRANSPORTATION SERVICE<br>ATTN DWANE KAMINS<br>5825 KELLEY ST<br>HOUSTON　　　　TX 77026-1901 | GEM INSURANCE AGENCIES LP<br>PO BOX 27469<br><br>HOUSTON TX　　　　　　77227 |

| POLICY PERIOD: | 12:01 A.M. Standard time | FROM: 01-01-2012 | TO: 01-01-2013 |
|---|---|---|---|

And for successive policy periods as stated below.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will terminate after any statutorily required notices are mailed to you. An insufficient funds check is not considered payment.

| PREM/BLDG | DESCRIBED PREMISES AND COVERAGES | LIMIT OF INSURANCE | RATE | PREMIUM |
|---|---|---|---|---|
| | EQUIPMENT BREAKDOWN | | | 226 |
| | SEWER BACKUP | 50,000 | | 330 |
| | | | | |
| 01 01 | 5825 KELLEY ST<br>HOUSTON TX 77026-1901<br>FRAME<br>OFFICES | | | |
| | BUILDING | 1,083,508 | .297 | 3,219 |
| | 　　Special Causes of Loss | 2,500 Ded | | |
| | 　　Windstorm or Hail Deductible | | | |
| | 　　Percentage: 2% | | | |
| | 　　Replacement Cost | 80% Coins | | |
| | 　　Automatic Valuation Adjustment | | | |
| | YOUR BUSINESS PERSONAL PROPERTY | 546,000 | .349 | 1,906 |
| | 　　Special Causes of Loss | 2,500 Ded | | |
| | 　　Windstorm or Hail Deductible | | | |
| | 　　Percentage: 2% | | | |
| | 　　Replacement Cost | 80% Coins | | |
| | 　　4% Inflation Guard | | | |
| | | | | |
| | ADDITIONAL INTEREST - Loss Payable<br>　　　PITNEY BOWES GLOBAL FINANCIAL<br>　　　SERVICES LLC<br>CONTINUED ON CP7002 | | | |

ABBREVIATIONS:　BLDG=BUILDING　COINS=COINSURANCE　DED=DEDUCTIBLE　INCL=INCLUDED　PREM=PREMISES

| Premium Charge Forms | Advance Premium | Premium Charge Forms | Advance Premium |
|---|---|---|---|
| | SEE UW7002 | | |
| Other Forms | SEE UW7002 | | |

| AMEND REASON: | ADDING SEWER BACKUP COVERAGE EFFECTIVE 01/01/2012 |
|---|---|

| PREMIUM FOR THIS COVERAGE PART | $　　6,452 |
|---|---|
| Endorsement Adjustment Premium | $　　　187 ADDITIONAL |

This Declarations Page supersedes and replaces any preceding declarations page bearing the same policy number for this policd period.

X _____
(COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE)

CP 70 01 12 92

UFGKelley_00387

POLICY NUMBER:     85315789

## COMMERCIAL PROPERTY SUPPLEMENTAL DECLARATIONS

| PREM/ BLDG | DESCRIBED PREMISES AND COVERAGES | | LIMIT OF INSURANCE | RATE | PREMIUM |
|---|---|---|---|---|---|
| 01 01 | CONTINUED<br>        PO BOX 909<br>        SHELTON CT 06484-0949<br>ADDITIONAL INTEREST - Loss Payable<br>        BANK OF HOUSTON<br><br>        3900 ESSEX LN STE 100<br>        HOUSTON TX 77027-5316<br>ADDITIONAL INTEREST - Loss Payable<br>        KONICA BUSINESS TECHNOLOGIES<br><br>        15325 SW 30TH PLACE # 100<br>        BELLEVUE WA 98007<br>        0082255031000 | | | | |
| 02 01 | 1000 LOUISIANA ST FL 81ST<br>HOUSTON TX 77002-5005<br>FIRE RESISTIVE<br>NON-GOVERNMENTAL OFFICES<br><br>YOUR BUSINESS PERSONAL PROPERTY<br>     Special Causes of Loss<br>     Replacement Cost<br>     4% Inflation Guard<br>     Sprinkler Leakage Exclusion | <br><br><br><br><br>2,500 Ded<br>80% Coins | <br><br><br><br>25,000 | <br><br><br><br>.336 | <br><br><br><br>84 |
| 03 01 | 600 TRAVIS ST RM K<br>HOUSTON TX 77002-3009<br>FIRE RESISTIVE<br>NON-GOVERNMENTAL OFFICES<br><br>YOUR BUSINESS PERSONAL PROPERTY<br>     Special Causes of Loss<br>     Replacement Cost<br>     4% Inflation Guard<br>     Sprinkler Leakage Exclusion | <br><br><br><br><br>2,500 Ded<br>80% Coins | <br><br><br><br>25,000 | <br><br><br><br>.338 | <br><br><br><br>84 |
| 04 01 | 5611 KELLEY ST<br>HOUSTON TX 77026-1966<br>JOISTED MASONRY<br>MERC - MODERATE SUSCEPTIBILITY<br><br>BUILDING<br>     Special Causes of Loss<br>     Windstorm or Hail Deductible<br>     Percentage: 2%<br>     Replacement Cost<br>     Automatic Valuation Adjustment<br>     Sprinkler Leakage Exclusion<br><br>ADDITIONAL INTEREST - 1st Mortgagee<br>        BANK OF HOUSTON<br> CONTINUED ON CP7002 | <br><br><br><br><br>2,500 Ded<br><br><br>80% Coins | <br><br><br><br>142,000 | <br><br><br><br>.292 | <br><br><br><br>415 |

CP 70 02 12 92

UFGKelley_00388

| POLICY NUMBER: | 85315789 |
| --- | --- |

## COMMERCIAL PROPERTY SUPPLEMENTAL DECLARATIONS

| PREM/ BLDG | DESCRIBED PREMISES AND COVERAGES | | LIMIT OF INSURANCE | RATE | PREMIUM |
| --- | --- | --- | --- | --- | --- |
| 04 01 | CONTINUED | | | | |
| | 3900 ESSEX LN STE 100 HOUSTON TX 77027-5316 | | | | |
| 04 02 | 5611 KELLEY ST HOUSTON TX 77026-1966 JOISTED MASONRY MERC - MODERATE SUSCEPTIBILITY | | | | |
| | BUILDING | | 21,000 | .292 | 61 |
| |   Special Causes of Loss | 2,500 Ded | | | |
| |   Windstorm or Hail Deductible   Percentage: 2% | | | | |
| |   Replacement Cost | 80% Coins | | | |
| |   Automatic Valuation Adjustment | | | | |
| |   Sprinkler Leakage Exclusion | | | | |
| | ADDITIONAL INTEREST - 1st Mortgagee     BANK OF HOUSTON | | | | |
| |     3900 ESSEX LN STE 100     HOUSTON TX 77027-5316 | | | | |
| | Certified Acts of Terrorism Coverage | | | | 127 |

CP 70 02 12 92

POLICY NUMBER:          85315789

## FORMS SUPPLEMENTAL DECLARATIONS

```
                            Premium

Applicable to the state of Texas
*SPECENDS(02-02)      SPECIAL END-OUT OF SEQUENCE                          143

Other Forms

Applicable to the state of Texas
 CP0010(06-07)      BLDG & PERSONAL PROP COVG FORM
 CP0090(07-88)      COMM PROP CONDITIONS
 CP0140(07-06)      EXCL OF LOSS DUE TO VIRUS/BACTERIA
 CP0142(01-11)      TX-CHGS
 CP0321(06-07)      WINDSTORM/HAIL PERCENTAGE DED
 CP1030(06-07)      CAUSES OF LOSS-SPECIAL FORM
 CP1032(08-08)      WATER EXCL END
 CP1056(06-07)      SPRINKLER LEAKAGE EXCL
 CP1218(06-07)      LOSS PAYABLE PROVISIONS
*CP7001(12-92)      COMM PROP DEC
*CP7002(12-92)      COMM PROP SUPPLEMENTAL DEC
 CP7003(11-86)      AUTOMATIC VALUATION ADJUSTMENT-APPLIES TO BLDG
*CP7034(12-01)      SEWER BACKUP COVG
 CP7053(08-01)      TX-CHGS-EQUIPMENT BREAKDOWN
 CP7067(07-07)      EQUIP BREAKDOWN ENHANCEMENT END
 CP9993(10-90)      TENTATIVE RATE
 IL0017(11-98)      COMMON POLICY CONDITIONS
 IL0275(09-07)      TX-CHGS CANCEL & NONRENEW PROVISIONS FOR CASUALTY
 IL0415(04-98)      PROTECTIVE SAFEGUARDS
 IL0952(03-08)      CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
 IL7083(08-10)      PAYMENT OF LOSSES
 SPECEND(00-00)     SPECIAL END
 ST0013(05-08)      EQUIPMENT BREAKDOWN STUFFER
 ST1333(05-07)      TX-IMPORTANT NOTICE
 ST1644(01-09)      POLICY WEBSITE STUFFER
 ST1646(03-09)      NOTICE-IMPORTANT-SECURITY
 ST1698(03-11)      NOTICE-PROTECTIVE SAFEGUARDS
*UW7002(04-96)      FORMS SUPPLEMENTAL DEC
```

**UW 70 02 04 96**


Appendix Tab 5

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section G., Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Ordinance Or Law**

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   b. **Earth Movement**

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass break age or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

UFGKelley_00419
60

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

 © ISO Properties, Inc., 2007

UFGKelley_00420
61

h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) Electrical current, including arcing;

(b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) Pulse of electromagnetic energy; or

(d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

 © ISO Properties, Inc., 2007

UFGKelley_00421
62

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) You do your best to maintain heat in the building or structure; or

   (2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1) Acting alone or in collusion with others; or

   (2) Whether or not occurring during the hours of employment.

   This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, including any of the following conditions of property or any part of the property:

   (1) An abrupt falling down or caving in;

   (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

   This exclusion, k., does not apply:

   (a) To the extent that coverage is provided under the Additional Coverage – Collapse; or

   (b) To collapse caused by one or more of the following:

      (i) The "specified causes of loss";

      (ii) Breakage of building glass;

      (iii) Weight of rain that collects on a roof; or

      (iv) Weight of people or personal property.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

 © ISO Properties, Inc., 2007

UFGKelley_00422

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.**, Ordinance Or Law;

(b) Paragraph **B.1.c.**, Governmental Action;

(c) Paragraph **B.1.d.**, Nuclear Hazard;

(d) Paragraph **B.1.e.**, Utility Services; and

(e) Paragraph **B.1.f.**, War And Military Action.

 © ISO Properties, Inc., 2007

UFGKelley_00423
64

**(2)** The following additional exclusions apply to C. insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property.

**LOSS OR DAMAGE TO PRODUCTS**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

 © ISO Properties, Inc., 2007

UFGKelley_00424
65

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

a. Animals, and then only if they are killed or their destruction is made necessary.

b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

(1) Glass; or

(2) Containers of property held for sale.

c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

(1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.3., does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in D.1. through D.7.

1. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

b. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

 © ISO Properties, Inc., 2007

UFGKelley_00425

c. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

d. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

    (1) A cause of loss listed in **2.a.** or **2.b.**;

    (2) One or more of the "specified causes of loss";

    (3) Breakage of building glass;

    (4) Weight of people or personal property; or

    (5) Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does not apply to:

    a. A building or any part of a building that is in danger of falling down or caving in;

    b. A part of a building that is standing, even if it has separated from another part of the building; or

    c. A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

    a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

    b. Awnings, gutters and downspouts;

    c. Yard fixtures;

    d. Outdoor swimming pools;

    e. Fences;

    f. Piers, wharves and docks;

    g. Beach or diving platforms or appurtenances;

    h. Retaining walls; and

    i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

    (1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    (2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

    b. The personal property which collapses is inside a building; and

    c. The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.7.**

 © ISO Properties, Inc., 2007

UFGKelley_00426

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   a. A "specified cause of loss" other than fire or lightning; or

   b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage – Collapse.

6. The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

UFGKelley_00427
68

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

b. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.**, does not increase the Limit of Insurance.

**G. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

 © ISO Properties, Inc., 2007

UFGKelley_00428
69

Appendix Tab 6

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. The exclusion in Paragraph B. replaces the Water Exclusion in this Coverage Part or Policy.

B. Water

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow;

3. Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

4. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings; or

5. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph 1., 3. or 4., or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs 1. through 5., results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

UFGKelley_00429

Appendix Tab 7

| KELLEY STREET ASSOCIATES, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| CITY OF HOUSTON AND UNITED FIRE | § | |
| AND CASUALTY COMPANY | § | |
| | § | |
| Defendants. | § | 295TH JUDICIAL DISTRICT |

### AFFIDAVIT OF DUANE H. KAMINS IN SUPPORT OF
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### AGAINST UNITED FIRE AND CASUALTY COMPANY

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

On this day Duane H. Kamins personally appeared before me, the undersigned notary public, who being by me duly sworn on his oath deposed and said:

1. "My name is Duane H. Kamins. I am the President of Kelley Street Associates, LLC ('Kelley Street'), the Plaintiff in the above-styled lawsuit. I am responsible for insurance coverage and claims for Kelley Street. I have personal knowledge of all the statements made herein, each of which is true and correct.

2. "Kelley Street was formed in 2005 for the purpose of developing and owning an office building and industrial facility located at 5825 Kelley Street in Houston, Texas (the 'Kelley Street Building'). The Kelley Street Building was completed in 2008.

3. "Kelley Street purchased commercial property insurance for the Kelley Street Building from United Fire & Casualty Company ('United Fire'), an insurance company licensed to sell property insurance in Texas. United Fire issued such insurance under its policy no. 85315789 (the 'Policy'), covering the period from January 1, 2012, to 2013. A true copy of the Policy is attached hereto as Exhibit A-1.

4. "On October 2, 2012, Kelley Street suffered a loss due to a failure of the plumbing system in the Kelley Street Building. Specifically, on the evening of October 2 water began to flow through a series of floor drains in the building, most but not all of which were located in bathrooms. The water level reached several inches throughout the building before water to the building was shut off. Kelley Street incurred costs of more than $150,000.00 to drain and dry the building and to repair the damage caused by this excessive water flow.

5. "On October 3, 2012, Kelley Street provided notice of this loss to United Fire. Notice was given to United Fire by Kelley Street's insurance agent, GEM Insurance Agencies, LP. A true copy of the Property Loss Notice is attached hereto as Exhibit A-2.



EXHIBIT

A

25

6. "By letter dated October 8, 2012, United Fire denied coverage for this loss. A true copy of this letter is attached hereto as Exhibit A-3.

7. "In November 2012, United Fire issued an endorsement to the Policy that, according to United Fire, would provide coverage for the loss to $50,000.00. Payment in that amount was subsequently made and accepted by Kelley Street without waiving the right to claim full coverage under the Policy. An exchange of emails between myself and Joyce Wilson, an adjuster for United Fire, is attached hereto as Exhibit A-4: Ms Wilson confirmed that the payment and acceptance of this partial payment of losses would not prejudice Kelley Street's claim to seek recovery of the rest of its loss under the Policy.

8. "Kelley Street subsequently retained counsel to pursue collection of its full loss under the Policy, and Kelley Street's counsel made demand for payment of such loss. To date, however, no additional payment has been made on Kelley Street's claim."



Duane H. Kamins

STATE OF TEXAS    §
                    §
COUNTY OF HARRIS   §

SWORN TO AND SUBSCRIBED BEFORE ME on this 30th day of December, 2013.

Notary Public in and for
The State of TEXAS

MARIAN ANNETTE FRANCIS
NOTARY PUBLIC
State of Texas
Comm. Exp. 04/05/2017

2

Appendix Tab 8

CAUSE NO. 2013-36796

| KELLEY STREET ASSOCIATES, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| CITY OF HOUSTON AND UNITED FIRE | § | |
| AND CASUALTY COMPANY | § | |
| | § | |
| Defendants. | § | 295TH JUDICIAL DISTRICT |

## AFFIDAVIT OF JOHN MOORE IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST UNITED FIRE AND CASUALTY COMPANY

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

On this day John Moore personally appeared before me, the undersigned notary public, who being by me duly sworn on his oath deposed and said:

1. "My name is John Moore. I am a plumber employed by Raven Mechanical, LP. I inspected the Kelley Street property personally, as described below. I have personal knowledge of all the statements made herein, each of which is true and correct.

2. "I have been employed as a plumber since about 2002, and I have been employed at Raven Mechanical since 2005. I am licensed as a Master Plumber in the state of Texas.

3. "On October 2, 2012, Raven Mechanical was called regarding an emergency at 5825 Kelley Street in Houston. I was assigned to visit the property, to assess the cause of the flooding water in the building, and to propose any necessary plumbing repairs.

4. "When I arrived and walked through the building, I found that the water level was at several inches throughout the building.

5. "I examined the plumbing throughout the building, including the bathrooms and kitchen as well as floor drains at various locations. I found that the flush valves in all the toilets were malfunctioning due to damage caused by debris, rocks and dirt that had been introduced into the domestic water main following a repair on the water main in Kelley Street, in front of the building. Due to the damaged flush valves, water had been continually flowing into the sanitary sewer septic system in the building. The septic system could not keep up with the volume of water being introduced to the system; after the septic system filled, water came up through the drains throughout the building, resulting in the flooding of the building.



EXHIBIT
B

99

6. "After my examination, I filled out a report on the work order issued by Raven Mechanical. A true copy of the completed Work Order, with the notes that I wrote on it the same day as my visit to the property, is attached hereto as Exhibit B-1. I made these notes in the ordinary course of business in connection with the above-described site assessment."



John Moore

STATE OF TEXAS      §
                       §
COUNTY OF HARRIS    §

SWORN TO AND SUBSCRIBED BEFORE ME on this 7th day of January, 2014.

Notary Public in and for
The State of TEXAS

CINDY YOUNG
Notary Public, State of Texas
My Commission Expires
SEPTEMBER 13, 2015

2